## Case No. 9,308.

### In re MAULE.

[1 MacA. Pat. Cas. 271.]

Circuit Court, District of Columbia. June, 1853.

PATENTS—NOVELTY—COMPOSITION OF MATTER—METALLIC PAINT.

[A metallic paint produced by well-known methods, and without the use of any new ingredient, from the refuse left in the manufacture of bi-chromate of potash, is not patentable as a new composition of matter, although the applicant was the first to utilize the refuse for this purpose.]

[This was an appeal by William P. Maule from the refusal of the commissioner of patents to grant him a patent for a metallic paint, alleged to be a new and useful composition of matter, made from the refuse produced in the manufacture of bi-chromate of potash.]

Thos. H. Speakman, for appellant.

MORSELL, Circuit Judge. The original application was filed on the 15th of December, 1851, and withdrawn, and the return fee paid to him. On the 13th of March, 1852, the same party filed another application for a patent for the same refuse material, to be treated in the same way and for the same purpose. This application was inclosed and sent on to the office in a letter from Mr. Maule's counsel bearing date on the 11th of

March. 1852, in which letter he says: "The Invention is a valuable one. The paint is manufactured at very little cost, being produced from an article which has heretofore been considered of no value, and yet it is of very superior quality for the purpose intended—for forming an almost purely metallic coating, very hard and durable. It has already been extensively used, and is very highly recommended." In a subsequent letter he incloses a printed paper dated 10th of February, 1852, from which it appears by the certificates of sundry persons that previously to that time, and previously to the application of the 13th of March just stated, the article for the invention of which the patent was prayed. had been publicly bought and sold with the knowledge and consent of Mr. Maule. The provision in the statute of 1836 [5 Stat. 117], authorizing the party to withdraw his application is in these words: "In every such case, if the applicant shall elect to withdraw his application relinquishing his claim to the model, he shall be entitled to receive back twenty dollars—part of the duty required by this act—on filing a notice in writing of such election in the patent office, a copy of which, certified by the commissioner, shall be a sufficient warrant to the treasurer for paying back to the said applicant the said sum of twenty dollars." Section 7. Whether under such circumstances a statutory objection existed at the time of filing the second application to the claim for a patent. I express no opinion, no such objection having been raised.

It appears from the papers in the cause that another application. dated the 10th of September, 1852, was presented to the office by the appellant, in which he says: "I have invented a new and improved metallic paint." And he proceeds to give a full and particular description thereof, at the close of which he says: "What I do claim as my invention, and desire to secure by letters-patent, is the before-described paint manufactured from the insoluble metallic residuum or refuse which remains after the extraction of the soluble parts in the manufacture of the chromate of potash or soda from chromic iron ore." This application was examined and rejected by the commissioner upon the ground that the alleged invention was not patentable for the want of novelty; and upon notice given an appeal was taken from the said decision and refusal to grant the patent as aforesaid. The reasons for which said appeal were duly filed, and the substance of which are—First. The application is not for making paint out of the oxides, &c., of iron, but from the residuum from the manufacture of bi-chromate of potash, which is a substance of a distinctive character well known in the arts, and is to be considered without reference to the elements of its composition. Second. The discovery of the peculiar properties of this substance, which render it capable of being manufactured into a most valuable paint, and its

application to that purpose by the process of cleansing and manufacture pointed out in the specification, constitute a patentable invention under the sixth section of the act of congress of July 4, 1836. Third. Though these properties were due entirely to the oxide of iron which the substance contains, and which have been known to be applicable to the same purpose, yet the discovery of these ingredients existing in this refuse material in such combinations and proportions as to render it useful to mankind in the manner now applied by Mr. Maule, together with the manner of preparation pointed out for rendering it capable of use, are patentable, a new and important result in the arts being produced thereby. Fourth. Though the amount of novelty or invention was small, yet this discovery is patentable on account of its great utility. The manufacture of the residuum into paint, in connection with the manufacture of bi-chromate of potash, is, therefore, a great improvement of the trade. The paint yields a large profit.

The commissioner, in order to show the absence of patentable invention, in answer to the reasons of appeal, makes a comparative analysis between what the appellant states the ingredients of the residuum to be and what is stated in the books of the composition of chromic iron, from which the conclusion is deduced that iron rust or oxide of iron must give the leading character to the material, and the residue will be red or brown, according as the roasting has been more or less skillfully conducted. "Mar's Colors" are referred to, in which are to be seen various paints prepared from the oxide of iron, mixed with other bodies, and of similar colors. To the second reason, to show that appellant was not the first to discover that this refuse is capable of being pulverized, washed, dried, and mixed with oils to form a paint, he says there is but one operation common to all these substances by which each is converted to a paint, namely, washing (when necessary), drying, pulverizing, and mixing with oil. This process, therefore, is not new. As to the washing, the books direct that the chromate of potash shall be lixiviated with water to save all of its salts. Third, that as to the discovery of the ingredients existing in this refuse mineral in such proportions as to render it useful and give it value, and to produce a new and important result in the arts, the same was no new discovery by the appellant. The books give the analysis of this ore, and show how to find out the exact composition; and so also with respect to the process. Mr. Maule has added substantially nothing to the knowledge of the chemical arts that was not known before. As to the difference in the expense, the red oxide of iron is one of the most abundant and most easily pulverized (next to the ochres) of all earthy minerals, and is known under the name of bog-iron—hematite. This makes a paint equal to any iron

paint, of a strong reddish-brown color, and it is very abundant. And so as to the hematites and other ores of iron. To the fourth, Mr. Maule's paint has no title to claim on the score of utility. It has not been shown to be better than any other ore or mineral. No invention has been proved. The mere repetition of this well-known process on any mineral or other matter, whether new or old, does not constitute a patentable invention. On the day and place appointed for the hearing said appeal, according to previous notice duly given, an examiner from the office appeared, and, as required of the commissioner by law, the said reasons of appeal and all the original papers in the case, together with the grounds of said commissioner's decision fully set forth in writing, touching all the points involved by the reasons of appeal, were laid before me; and the said appellant filed his arguments in writing in support of his claim.

It will therefore appear that the appellant states his claim to a patent to be for a metallic paint. The invention, he says, consists in making paint from the refuse insoluble matter which remains after the extraction of the soluble parts in the manufacture of chromate of potash from chromic iron ore; that this article has hitherto been considered as of no value in the principal establishments for the manufacture of the bi-chromate of potash in this country and in Europe; it is thrown out as a valueless commodity. The appellant has discovered that it is a valuable article for paint, when properly prepared, and has practically applied it to that purpose, by which about fifteen per cent. profit is gained in the manufacture of bi-chromate of potash and the public supplied with a valuable paint at a very cheap rate. The rejection by the commissioner appears to have been upon the ground that there was no new composition of matter, no new process, but one substantially formed of old ingredients, and by an old process, and, therefore, that there was no patentable invention. I do not understand from the argument in reply that anything is claimed because of any new ingredient in the refuse composition, or because of the process out of and by which the paint is manufactured, but that it is contended that the paint itself is a new and useful composition of matter and a patentable invention manufactured from said worthless residuum, and that he pretends to no claim whatever in connection with the manufacture of the chromate of potash; that his invention begins where that process leaves off. This manufacture, however, thus claimed to be a new composition and a patentable invention, has no feature in it that can constitute a new invention, unless its being manufactured out of the said residuum makes it so.

It is contended that it is within the provisions of the act of congress of July, 1836, § 6, which says "that any person or persons having discovered or invented any new and useful art, machine, manufacture, or composition of matter, or any new and useful improvement on any art, machine, manufacture, or composition of matter not known or used by others before his or their discovery or invention thereof, and not at the time of his application for a patent in public use or on sale with his consent or allowance as the inventor or discoverer, and shall desire to obtain an exclusive property therein, may make application in writing to the commissioner of patents expressing such desire; and the commissioner, on due proceedings had, may grant a patent therefor." In the construction of this part of the statute as it regards this class of subjects, I suppose the test to be that the combination or process of compounding it must be new.

The cases of The King v. Wheeler, 2 Barn. & Ald. 345, and Crane v. Price [4 Man. & G. 580] were cited for the purpose of supporting the principles that wherever there is sufficient utility to render any discovery better or more valuable to the community, or to those engaged in the particular trade, there is a sufficiency of invention to support a patent; that a patent may be granted for the use of things already known, and producing effects already known, and acting in a manner already known, provided those effects be produced so as to be more economically or beneficially enjoyed by the public. Again, if there be anything material or new which is an improvement of the trade, that will be sufficient to support a patent. Crane's Case, one of those which is referred to for these principles, is amongst the most modern English cases upon the subject, and in which most, if not all, of the previous decisions on these points were reviewed. That case is decided with a view to the construction of the British statute of monopolies, according to the construction given to which, it must be considered as less restrictive than the terms contained in our statute. There are certainly dicta to be found in that and other English cases going to the extent with respect to the beneficiary and economical result contended for in the argument in this case. But it will be found by a critical examination of the facts in the case that there was enough in the case to warrant the decision without going to the extent of those dicta; that is, there was a new and material feature in the combination—that of the hot air blast—which had never been used in that particular combination before. This, together with the result, was a sufficient invention.

The argument, also, is that the objection of double use does not apply; that in this case it is not the double use of a thing before known, but the production of a new article from a substance which, though already known, was not known to have any use at all; that it is of no consequence that some, or even the principal, ingredients in the new article thus produced have been used for the same purpose before, if the composition

claimed be new in its particular combination, proportions, or manner of being produced, and otherwise patentable. And for this Ryan v. Goodwin [Case No. 12,186], is relied on. In that case it will be found, as correctly stated in Curtis, that the patent claimed as the invention of the party a new and useful improvement in the making of friction matches by means of a new compound; and it was said that the ingredients had been used before in the making of matches. The court said that the true question was whether the materials had been used before in the same combination, and if not, that the combination was patentable. But in this case the compound out of which the paint was manufactured or made had no new ingredients in it, unless its being said to be a residuum would supply that deficiency; and I cannot agree that it would. In Howe v. Abbott [Id. 6,766], the rule of law laid down is that you cannot have a patent for a result merely without using some new mode or process to produce it. Again, it must be admitted that if new at all, it was only so because of the occasion; and the rule is that if the occasion only is new, that is, produced by old agents and by an old mode, it is not patentable. And so the supreme court of the United States in a very recent case have decided that a patent is not good for an effect or the result of a certain process merely. There is still another case of Steiner v. Heald, in 2 Car. & K. 1022. I have not had it in my power to obtain the book in which the case is reported, but will state the notice of it in Lund, Pat. p. 18. The invention patented was for extracting from spent madder a certain coloring matter used in dyeing, and known by the name of "garancine." The opinion is a very long one. I can therefore state such parts only as will show the reasoning and opinion of the court: "A person discovers a process by which he can get from fresh madder a large quantity of an article, which I must now take to be well known, called 'garancine.' Somebody applies precisely that same process to madder that has been merely boiled. There is no magic in a name or in any language that could be used. The boiling of madder gets out only some of it; this process gets out the rest of it. And in my opinion, in point of law, if the matter is reduced to that, you cannot take out a patent for using a perfectly-known process to get the residue of an article from a material which is known to furnish it, the process being one by which you could get, in the first instance, more or the whole of the article; and by your use of the process you merely get the residue which the common process left behind." Again, at page 22, the judge says: "There is no magic in calling this spent madder. It is madder that has undergone a process by which the whole virtues are not extracted. It appears to me that it is precisely the same as if you applied a process to grapes already imperfectly squeezed, by which you squeezed a little more juice out of them than was formerly done. I do not think you could have a patent for that, for see what it would lead to: If a person in manufacturing districts where they extract metal from certain ores were to find that by applying a process to an ore you could get ten per cent. more of the metal, and it then became worth working the refuse that might stand around in heaps, covering many acres, possibly, it would be just worth while to work that over again by the new process. I am clearly of opinion that no stranger could step in and say: 'Now, I will have a patent for using your process which you have given to the public. I will have a patent for using it to this old rubbish, because it may yield some ore.' I do not think that would do." I have referred to and cited this case for the principles settled by it, which I think are applicable to the case before me.

Upon the best consideration, therefore, which I have been able to give this case, the conclusion to which I have arrived is that the decision of the commissioner is right and correct, and I do hereby affirm the same.